Thank you, Your Honor. May it please the Court, Elizabeth Cruickshank for Plaintiff Appellant Paul Johnson. I'll watch the clock and I'd like to reserve three minutes for rebuttal. This Court has held that dismissal on statute of limitations grounds is inappropriate unless it is beyond dispute that the Plaintiff can prove no set of facts establishing the timeliness of the claim. But here, there's no doubt that Mr. Johnson's claim is timely. The very first time Mr. Johnson had any awareness that he had suffered the constitutional injury that forms the basis of this action was when he was diagnosed with prostate cancer in 2013 and he promptly filed his lawsuit the following year. The decision below to the contrary rests on two legal errors, each of which warrants reversal. First, the District Court conflated the failure to relieve Mr. Johnson's symptoms at the time with defendants failure to treat the underlying cause of those symptoms, which was cancer. Because of this conflation, the District Court erroneously concluded that Mr. Johnson knew of his injury as soon as defendant failed to alleviate Mr. Johnson's symptoms instead of when he was diagnosed with cancer. And second, at the very least, the District Court should have given Mr. Johnson leave to amend because submissions outside the complaint make even clearer that Mr. Johnson did not know or have reason to know of the factual predicate for this action until 2013. And since the defendant has already conceded that leave to grounds is proper, the question before this court is simply whether Mr. Johnson's complaint as currently pleaded is enough to show that it is possible under some set of facts that he can prove the timeliness of his claim. I'll start with the first point because each of the District Court errors stemmed from that conflation of Mr. Johnson's symptoms, which led him to seek medical care with the underlying cause of those symptoms. Mr. Johnson is not suing defendant because of the treatment to alleviate his initial symptoms. His claim is that he was denied care for the underlying cause of the symptoms, cancer, which is a separate injury altogether. This is similar to the Augustine case. Here, the injury alleged is not the initial symptoms that led him to seek care, but the development of the underlying cause of the symptoms from a potentially controllable condition into a much more serious one. Because the lack of treatment for his cancer is the injury that forms the basis of this action, Mr. Johnson didn't know or have reason to know of that injury until he was diagnosed. Is it your argument, counsel, that pancreatic cancer, that's what he had, right? Prostate cancer. Prostate cancer would have been treatable if he had been treated when the symptoms first arose? That's the basis of the underlying claim, which the District Court has twice concluded as cognizable. But that's when the failure to provide medical services occurred, right? That's correct. The failure to provide any treatment for that underlying condition occurred in 2009, but the accrual inquiry is not the date of the injury necessarily, but the date on which the plaintiff knew or had reason to know of the injury. Well, can I have a follow-up on that? It's not as though he complained of a symptom, just to follow up on Judge Hawkins' question. It's not as though he complained of symptoms and was sent away. My understanding of the record is he complained of a symptom and he was given some testing, and then he was almost immediately transferred. So my first question is, didn't he receive some tests but not treatment? So there were, according to the complaint, this is at ER 34 and 35, there are two dates on which Mr. Johnson sought medical care while he was incarcerated at CTF. And the first date was in June 2009, and that's when he received a blood sample and a urine sample. And so I think that from there, the allegation is that those results came back and that there was no follow-up, no indication that there was anything wrong with him from defendant on the basis of those initial tests. Right, counsel. So I think the answer to my question is yes. He got some testing and not treatment. And so that's what I hear you saying. So it seems to me to be, and this is for both, counsel, really. I don't know how he was supposed to know that he had anything that required treatment at that point, or reason to complain, much less reason to sue, right? And if he had that point, I don't know what he would have sued for. In terms of causation, he had certain symptoms before he went in. He had certain symptoms after he went in. At that point, I don't understand how clock starts pursuant to the discovery rule because, right, he's just got some of the same symptoms. If he had reason to know it, and there's some case law where folks had reason to know that there was a real danger presented by symptoms. One of the cases that we've all read has to do with somebody who had a chronic condition, diabetes, and he wasn't getting what he needed. And so then the sequela occurred because he had these chronic, wildly fluctuating blood sugar levels and whatnot. But just getting back to your case, I'm not sure, is there something I'm missing that would have signaled to him that he needed treatment at that point? No, and I think that that's the basis of this argument on appeal, is that based on the experience that Mr. Johnson had at the time, there was no way for him to know that something had been done, that he had received constitutionally inadequate treatment, that he'd been denied treatment for the underlying cause of his symptoms. So if we could get right to it then, you need to distinguish, your team needs to distinguish Wallace, right? It's a case where we've all read it. Yes, where it's just a question of having symptoms and then having an exacerbation of a condition. So could you speak to that, please, and tell me why your case differs? Right, of course. And I do just want to note, just responding to the prior question, it's abundantly clear in the deliberate indifference cases that the mere denial or delay of treatment is insufficient unless a plaintiff can state that he suffered some harm as a result of the denial of treatment. And so I would just add that I think that's yet another reason why it's unclear exactly what Mr. Johnson would have been alleging in 2009 based on the information that was available to him at the time. And in terms of Wallace and sort of the distinction between extent and this case, in Wallace, as you pointed out, Judge Kristen, there was a known condition that worsened over time. And the court said that as soon as the plaintiff had a cause of sort of a complete and present cause of action, that was when the clock started running. But here, and the point that I was getting to earlier is that I think there's been a conflation and the district court conflated the symptoms that Mr. Johnson was experiencing. So the urinary problems and the stomach pain and other symptoms from, so the lack of treatment for those symptoms from a lack of treatment for the underlying causes. I think the district courts and the lack treatment for the underlying cause was completely unknown to Mr. Johnson at the time. So this isn't just that he didn't know of, that he knew that there was something that had been done to him that was wrong at the time. And he just didn't know that it was going to progressively worse. And here he didn't know at all that he'd suffered the particular harm that's the factual for this complaint. And that's the distinction I think with Wallace. Has he exhausted his administrative remedies? Yes, he pleaded in all of his complaints, I believe, that he did exhaust. But also a defendant hasn't raised exhaustion previously and exhaustion under the PLRA is an affirmative defense that must be raised if it starts forfeited. But even so, he did please that exhausted at page 35 of the record. So the one other piece that I wanted to say on accrual that I think the district court also missed before I turn to the other issue is that the accrual inquiry is highly individualized and it turns on sort of the fact-intensive nature of the claim. And I think we see that most clearly in Bebo. The question what a plaintiff knew or had reason to know at the time of the injury and when he knew or had reason to know that he'd been injured is very fact-specific. And so in the Bebo case, some of the factors this court considered in determining when the plaintiff knew or had reason to know included the fact that the plaintiff was a long-haul trucker and so might have missed news reports about the experiments at issue. The fact that he had a limited education and the fact that he'd been in the military and therefore had been led to believe that radiation treatment was safe. And so that was a, and this isn't to say that those justifications categorically determined that the claim was timely, but just that that was a question for the trier of fact, whether it would have been reasonable for a person in the position of that plaintiff to know or have reason to know that he'd been harmed. And so I think similarly here, there are facts in this record that similarly foreclose that conclusion. For instance, I mean, again, the fact that Mr. Johnson got treatment and then, or rather got tests taken and then was sent away without any reason to think that there's anything wrong. And in fact, at ER 75, he stated in his grievance that he's been lied to. He's been told that his blood work came back fine and that was incorrect. But also the fact that Mr. Johnson himself has a very limited education and has stated that he suffers from mental illness. And so I think that any of those individualized factors would preclude a categorical determination that the plaintiff knew or should have known of his injury at the time. And I'll just, just a few words on the liability question that defendant has raised for the first time on first that's that's been forfeited. It wasn't raised before the district court. It wasn't passed on by the district court. And the general rule is that this court doesn't permit parties either side to raise a new argument on appeal. And none of the exceptions to that rule applies here. But in any event, I think it's abundantly clear both from the complaint and then also from Mr. Johnson's other submissions that he's suing Dr. Trudy in his individual capacity and not and specifically the issue of respondeat superior is that the nature of a respondeat superior claim is that an individual is being sued exclusively in his capacity as a supervisor of other individuals. Counsel, do you want us to reach this issue or not reach this issue? I don't know. I just wanted to give the court in any event, if the court does determine that it should be reaching the issue, I think it's abundantly clear from the papers that, that Mr. Johnson is speaking to Dr. Trudy's individual liability. And if the court has no questions about that, I'll reserve the remainder of my time. Do either of my colleagues have questions? Doesn't appear that we do. Thank you, Ms. Cruikshank. Counsel, we'll hear your argument now, if you want to unmute yourself. Good morning, your honors, a minute please the court. I'm Deputy Attorney General Ian Ellis and I'm appearing on behalf of Dr. Joseph Trudy, who is the Chief Medical Officer of the Correctional Training Facility and in whose favor judgment was entered below. Mr. Ellis, on my end, your voice is very faint. That's more mean than it is the technical equipment. I apologize, your honor. This court should affirm the judgment for three reasons, very briefly. The court based, the district court based on the pleadings and the briefing below correctly concluded that Mr. Johnson's claim is time-barred. Second, and the district court did raise this point independently and consider it, Mr. Johnson has pleaded a case for supervisory liability, not the proceeding issues are fatal to the complaint. Leave to amend would ultimately be futile and the district court did not err in denying leave to amend on that basis. Now, turning to the first issue, Mr. Johnson has alleged a deliberate indifference claim, deliberate indifference to serious medical needs. The deliberate indifference he made in 2009. Everything is tied back to that. So the claim, in theory, would be based on the failure to treat the serious medical needs as they existed in 2009 or there's some unclear failure to diagnose claim here, which really does not sound in deliberate indifference. Let me follow up on Judge Christin's question to your adversary. He experienced these systems, symptoms in 2009 and went in for treatment provided by or supervised by Dr. Chudy, correct? And what happened was tests were ordered, right? Uh, yes, your honor. Did he receive any treatment? Testing is treatment. It's diagnostic. Could you start your answer to my question with a yes or no? Yes, your honor. Testing, my understanding is that testing is part of treatment. It's diagnostic in nature. Is it, uh, does it remediate any pain? That's unclear from the record and that's part of why this would form the basis for a deliberate indifference claim in summer 2009. Mr. Johnson arrives at CTF and is complaining of blood in his stool, bleeding ulcers, difficulty urinating, penile pain. And I think that's the collection of things at that time. Each one of those individually would probably be, would qualify as a serious medical need, the denial of treatment for which would furnish the basis for a deliberate indifference claim, but certainly the constellation of symptoms Mr. Johnson is complaining over that time. Is he supposed to know that he had prostate cancer? He's not supposed to know that he had prostate cancer, but then again, it's alleged in the complaint, and this is at, I believe pages 30 and 34, 35 of the record. It's alleged in the operative complaint that he didn't have cancer at the time, that the failure to treat the symptoms that he had at the time caused the development of prostate cancer later on. And again, in deliberate indifference contexts, you'd want that causal link perhaps. Wait a minute. Nobody knows whether he has the cancer or not in 2009 because nobody did any diagnostic testing to determine whether he had the cancer in 2009, correct? I agree, your honor, that no one knows whether he has. So you can't say he didn't have the cancer in 2009, correct? Your honor, and I don't mean to say that. What I mean to suggest the cancer to the extent that he alleges, based on the pleadings, that the cancer was caused by the failure to treat in 2009. I'm bound by the record in that regard. Okay. Now, to the extent we expand the inquiry, or to the extent that there are statements indicating that what Mr. Johnson has alleged is a failure to diagnose, failure to diagnose sounds medical negligence, but it doesn't typically sound in deliberate indifference specifically because deliberate indifference requires knowledge of a serious medical need and deliberate indifference as to its treatment. Right. And his claim may be dismissed for that reason, because there's a really big difference between negligence, med mal, and deliberate indifference. But today, we're talking about the statute of limitations and when the clock starts running. And so just for my vote, I'm very concerned about your theory because it seems to me you're advocating a rule that were we to adopt it, and I don't see that we ever have, then prisoners would be in a position where if they go to, you know, whatever medical facility is available to them with a pain, and leave, and their foot still hurts, their hand still hurts, their head still hurts, because somebody hasn't made that pain stop, that they're going to be in a position of being the statute of limitations clock has started to run and encouraged to file suit. And it is not the case that any medical care provider can always make pain stop. So what is your answer to that, please? Certainly, Your Honor. My answer is that we're not asking the court to adopt any new rule. Based on this court's precedent, we believe that the claim accrued in 2009. And it's really because there was a denial of treatment for serious medical needs that are based on the pleadings, causally related to the later diagnosed cancer in a way that would suggest that the cancer is really a further deterioration. And I believe Appellant uses in their opening brief, the term progression of the disease. Let me ask you this, then, because you were consistent. The district court in this case relied on an earlier unpublished case from another district court judge that talked about two tracks in our case law for when a claim accrues. Are you advocating that we have two tracks in our case law, counsel? I'm not advocating that specifically. I will note that there are cases where this court has applied a delayed discovery rule based on a contemporaneous injury, or say, for example, in Bebo, something where there's a lack of information and a delayed symptomology that would not have led Mr. Bebo to understand that the test that he had been fraudulently induced into, or the experiments that he had been fraudulently inducing. But I read Bebo as an application of the discovery rule. He did not have reason in that. And again, very fact specific, right? He didn't have reason to wreck it. He knew he'd have been subjected to this testing and did not have reason until years later to realize, oh, that may have been very harmful or dangerous. So it strikes me as a pretty vanilla application of the discovery rule. And I just want to make sure when you're asking us to apply our precedent and not to you don't read us to have two tracks in these types of cases. I just want to get your answer on that. Because if you do, we need to explore that, please. I do not believe that the court has two tracks differentiated from what we argued in our briefing, which is there are simply cases of delayed discovery. There are cases that do not involve delayed discovery. And this is a case that I do not believe involves delayed discovery. And I'll be clear as to why. The criteria for a serious medical need involves conditions that a reasonable doctor or patient would consider worthy of treatment or comment. That certainly occurred in this case. Mr. Johnson sought treatment. Other conditions that would interfere with the plaintiff's daily activities, difficulty urinating, you know, those things certainly would appear to implicate Mr. Johnson's daily activities. And then there's chronic or substantial pain. And it's pled that he is in considerable pain. It appears chronic in nature based on his lengthy history of neurological difficulty that's documented in the record. And the fact that he would experience what I imagine to be substantial pain would further typify this constellation of symptoms. I mean, these are truly bracing symptoms as a serious medical need. If presentation, that is, in 2009, a basis for filing a deliberate indifference claim that is a prima facie case for success. And if this cancer that is discovered in 2013 is causally connected to a deterioration of those same untreated symptoms, it is organically just a continuation of the same injury which Mr. Johnson presented and which the defendant allegedly failed to treat. And if that's the case, the claim accrued in 2009. Mr. Johnson did not file suit until five years after the claim had accrued. And that would put him one year beyond the relevant statute of limitations. Now, what's your position on when the time clock started? The day that he sought treatment for the conditions you've described? Your Honor, he is, Mr. Johnson is at the correctional training facility for approximately three months in the summer of 2009, leaving on, I believe, September 3, 2009. So the latest possible date on which the claim could have accrued on our understanding is September 3, 2009. I'm just trying to, I'm trying to fix in my mind, he seeks treatment for these conditions, some tests are ordered, and then what happens? And then Mr. Johnson is transferred to another facility. Okay. And is it fair to say that nothing happens? It's not, it's not in the record. So we are bound by what is in the record. The record does not answer that question for us. I'm just trying to figure out at what point, if in fact, you want the panel to adopt the rule that the moment he goes in for the treatment of these conditions, the clock starts that instance, or does it start a week later when he's wondering why nothing has happened? Or three months later when nothing has happened? Or a year later when nothing has happened? Some light has to go on in his head to start that clock, doesn't it? It does, Your Honor. In fact, as noted in Debo, there are two critical facts that are required for the accrual of a claim. The plaintiff knows or should know that he has been injured, and the plaintiff knows the party responsible. In this case, with the painful and obvious urological and gastrointestinal symptoms with which plaintiff presented to CTF staff, he knew he was injured because those are, those form the basis for a serious medical need, and I don't believe that's disputable. So he should have known that he probably had cancer. No, the cancer, so the, no one, the real, the real issue here is that if he had cancer, it wasn't diagnosed, and it'd be very unusual to sue for a failure to diagnose in a delivered indifference case. My impression, based on what plaintiff has alleged below what the operative complaint says, is that he is suing because the failure to treat in 2009 caused the development of cancer that was diagnosed in 2013. He should have known in 2009 that Dr. Tudy and or the people he supervised had read the results of the test and concluded that he may be on the road to prostate cancer. That's what he should have known? No, your honor, he only should have known that he had a medical need for which treatment was denied, and if he knows that, then he knows all the facts necessary for the claim to accrue, and to the extent that that claim or that injury worsens and progresses, as is alleged, into a further deteriorated state like prostate cancer, then the clock should have run when the treatment was denied and the plaintiff knew it. Now, if I can, I'd like to follow up on something else you mentioned, which is the failure to treat by employees supervised by Dr. Tudy. Plaintiff alleges, and this was something the district court specifically considered, I believe it's at page, it might be at page 35 of the record, page 34, 35 of the record, it's in a footnote. The court spends a briefing to our motion for summary judgment that he never saw Dr. Tudy, and that that quote wasn't the issue. I'd like to discuss that further, but I realize I'm out of time, and I thank you very much. Thank you. Thank you, counsel. Would you like to present rebuttal in this question? Yes, hopefully briefly, Judge Christin. Sure. So, I do just want to respond to a few points from Mr. Ellis, and in response to your question, Judge Christin, I don't think that this is a two-tracked inquiry. I think this court has consistently stated that the accrual question turns on when the plaintiff knew or should have known that he suffered a constitutional injury that forms the basis of the action. And again, I think that's generally a highly fact-intensive question when that issue is in dispute. As I mentioned, that was the case in Bebo and in Greg. Judge Hopkins, also, you had asked sort of questions about the point at which the claim did accrue. Was it that week? Was it the following week? At what point did the light go on in his head? And I would say that because of the ambiguity of any of those questions, dismissal is inappropriate at this point. This court's precedent makes clear that dismissal on statute of limitations grounds is inappropriate unless it appears beyond doubt that plaintiff can prove no set of facts establishing the timeliness of his claim. And so, to the extent that there is a question about exactly when the, quote, light went on in his head, that forecloses dismissal at this stage. And then finally, I just want to... How old is your client? 61. And you've told us, does the record tell us about any mental impurities? So, that's not before this court, but it's before the district court. And so, to the extent that the court determines that leave to amend is appropriate for further facts about my client's mental state... But that's in the record, right? That's not in the record now. That's not in this record, but it does... Okay. Counsel, what's your best response to Wallace? Oh, Judge Battalion, please go right ahead. I do have one question. Does the record reflect when the next visit after the 2009 visit was? I don't think that's in the record before the district court, no. And I think... Thank you. No. Okay. And so, I do just want to touch briefly on the severity of the symptoms, the point that Mr. Ellis is going back to. First, I do think that repeats the district court's error of conflating the symptoms with the underlying cause. Just because Mr. Johnson sought medical care and was sent away without any form of treatment or any mediation of those symptoms doesn't mean that he had any basis for knowing that there was something seriously medically wrong with him. And I also want to note that in this court's precedent, the mere existence of some amount of ongoing symptomology has been insufficient to categorically time bar a claim. So, in the Bebo case, for instance, over the course of 30 years between the treatment and the lawsuit, the plaintiff experienced severe recurrent testicular pain, rashes, and lumps in his lymph nodes, and that wasn't enough to sort of categorically put him on notice. And similarly, in the Gregg case, the abusive therapeutic experience, the plaintiff knew at the time that she had experienced humiliation and had felt violated by her therapy. And again, this court stated that that was insufficient to sort of categorically demonstrate that she knew or should have known of the basis of her lawsuit. And finally... If you could, to counsel's strongest argument. Because the district court didn't rely on those cases. It relied on Wallace and it relied on Payne, right? And those are the two cases where Wallace certainly is controlling because it's a Supreme Court case. And in there, the court has a phrase that I don't want to take a minute to find, but it's a phrase that speaks to if what's at issue is the exacerbation of a pre-existing problem, then it should not be a case that the clock starts running, that it is within plaintiff's control to decide at what point the symptoms become sufficient, because then the plaintiff would really be in control of the clock. That's a pretty butchered summary of that statement, but you know the one I mean. Can you tell me how do you distinguish Wallace, please? That's his strongest argument. Of course. And I do see that my time is over, so I'll try to do this. Go right ahead. So once again, this is not a situation where the plaintiff knew that he had suffered a harm, rather the harm that forms the basis of the complaint, and he was just watching it worsen over time. This is a case in which the plaintiff did not know on the basis of the lack of medical treatment that he'd received that he was being denied care for something that was seriously medically wrong with him. And so this isn't a progression of something that plaintiff was aware of and just had seen worsening. This is something that plaintiff had absolutely no idea was going on in his body. And I think you'd also ask about the pain question. And I do just want to note that this court has made clear in vivo that pain is subjective and that drawing categorical conclusions about what a plaintiff knew or ought to have known simply based on some knowledge of pain is insufficient, again, to time bar a complaint at the dismissal. Thank you. Thank you, counsel. I'm sorry to cut you off. You've gone over your time, but you did that in response to one of my questions. So anyway, I want to thank both counsel for your really excellent arguments. It's very, very helpful. And for your briefing as well. And Ms. Cruikshank, I need to thank you. We all thank you for participating in our pro bono program. All right. With that, we'll take that case under advisement. Thank you so much.
judges: Hawkins, Christen, Bataillon